Josh H. Escovedo, State Bar No. 284506
Eric A. Caligiuri, State Bar No. 260442
**WEINTRAUB TOBIN** CHEDIAK COLEMAN GRODIN
Law Corporation
400 Capitol Mall, 11th Floor
Sacramento, California 95814
Telephone: 916.558.6000
Facsimile: 916.446.1611
Email: jescovedo@weintraub.com

Attorneys for Plaintiff Confi-Chek, Inc.

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONFI-CHEK, INC, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>ASHFAQ RAHMAN, an individual; LOCALBLOX, INC., a Washington corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>(1) VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT;<br>(2) VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT;<br>(3) BREACH OF CONTRACT;<br>(4) CONVERSION; AND<br>(5) UNFAIR COMPETITION<br><br>**DEMAND FOR JURY TRIAL** |

Confi-Chek, Inc. ("Confi-chek" or "Plaintiff") alleges as follows:

### THE PARTIES

1. Confi-Chek, Inc. is a duly registered California corporation with its principal place of business located at 1821 Q Street, Sacramento, California 95814. Confi-Chek is duly authorized to do business in the State of California as PeopleFinders through its website, www.peoplefinders.com.

2. Defendant Ashfaq Rahman ("Rahman") is an individual domiciled and residing in the State of Washington. Confi-Chek is informed and believes that Rahman is co-founder, Chief Technology Officer, and Chief Scientist at LocalBlox, Inc. ("LocalBlox") (collectively with Rahman, the "Defendants"). Confi-Chek is informed and believes that, at all times relevant to

the allegations in this Complaint, Rahman was the agent, employee, and joint venturer of LocalBlox and in doing the things hereinafter alleged, he was acting within the course and scope of said agency, employment, and joint venture.

3. LocalBlox is a duly registered Washington corporation with its principal place of business located at 5684 173rd Avenue, Bellevue, Washington 98006. LocalBlox markets itself as a data and analytics company that collects and organizes business and consumer data to sell to businesses as searchable "customer intelligence."

4. The true names and capacities of Does 1 through 100, inclusive, are unknown to Confi-Chek, who therefore sues these Doe defendants by such fictitious names. Confi-Chek prays for leave to amend this complaint to show the true names and capacities of said Does when the same have been ascertained. Confi-Chek is informed and believes, and thereon alleges, that each of said Doe defendants is responsible for the actions hereinafter alleged and described.

5. Upon information and belief, at all times herein mentioned, each defendant, including the Doe defendants, acted individually and/or as the agent, co-conspirator, aider, abettor, joint venturer, alter ego, third-party beneficiary, employee, officer, director, or representative of the other defendants and in doing the things hereinafter averred, acted within the course and scope of such agency, employment, or conspiracy, and with the consent, permission, and authorization of each of the remaining defendants. Upon information and belief, all actions of each defendant as averred in the claims for relief stated herein were ratified and approved by every other defendant or their officers, directors, or managing agents.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1338, 17 U.S.C. § 1203, and 18 U.S.C. § 1010, in that this action arises out of a violation of the Digital Millennium Copyright Act and the Computer Fraud and Abuse Act. The Court has supplemental jurisdiction over Confi-Chek's third, fourth, and fifth claims pursuant to 28 U.S.C. § 1367 because those claims are so related to Confi-Chek's other claims over which the Court has original jurisdiction that they constitute the same case or controversy.

7. Venue is proper in the Eastern District of California pursuant to the requirements of 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

8. This Court has personal jurisdiction over the parties because they have transacted business within the district, including by using Confi-Chek's online services to scrape data.

9. Although the terms of use governing the relationship of the parties includes an arbitration provision, that arbitration provision includes an express exception for matters involving equitable/injunctive relief. As stated below, Confi-Chek seeks a permanent injunction against both Defendants, and accordingly, this matter is properly before the Court.

## GENERAL ALLEGATIONS

10. Confi-chek provides online public record and investigative information to individuals who need to locate people and businesses, or otherwise perform background checks. Its products and services include people searches, profiles reports, real property searches, business searches, and court searches. Confi-Chek has been providing these services since 1986. Confi-Chek provides similar services under various fictitious business names.

11. Through its fictitious business name PeopleFinders, Confi-Chek serves as a one-stop resource for people searching online. PeopleFinders has indexed millions of publically available records and provides a simple search format for millions of adults residing in the United States. In addition to free people searches, PeopleFinders has search portals for reverse phone lookups. PeopleFinders provides comprehensive white pages that give instant access to millions of records.

12. On its website, www.peoplefinders.com, Confi-Chek provides its terms of use (the "Terms of Use"), which its users are required to acknowledge their agreement to upon signing up to use the site's services. A true and correct copy of the Terms of Use is attached hereto as **Exhibit 1** for the Court's convenience.

13. The Terms of Use state, in pertinent part, as follows:

///

ACCEPTANCE OF TERMS OF SERVICE

This Terms of Use (the "Agreement" or "Terms") is an agreement between you and Confi-Chek, Inc., who owns and controls the website www.peoplefinders.com (collectively, "PeopleFinders", "us", "our" or "we") and sets forth the legally binding terms for your use of the website www.peoplefinders.com, and any successor websites, (collectively the "Sites"), and other interactive properties, including but not limited to our mobile applications and mobile-focused websites (the Sites and other PeopleFinders interactive properties are collectively referred to herein as the "PeopleFinders Applications"). The Terms govern your use of the PeopleFinders Applications (however accessed and/or used, whether via personal computers, mobile devices or otherwise and any other means or applications in which you connect with us or use our Services).

Each time that you access or use PeopleFinders Applications you signify that you have read, understand, and agree to be bound by our privacy policy incorporated herein by reference. If you do not agree to any of the terms of the privacy policy or the Terms, you must discontinue using PeopleFinders Applications and Services.

. . .

**Personal Use Only.** The PeopleFinders Applications, the Content and the Services are intended for your personal, noncommercial use in accordance with these Terms. You agree that you will not, unless specifically permitted by us (i) copy, display or distribute any part of the Content or PeopleFinders Applications, in any medium, without PeopleFinders prior written consent, or (ii) alter or modify any part of the PeopleFinders Applications other than as may be reasonably necessary to use the PeopleFinders Applications for their intended purpose. You further agree that you will not use any automated devices, such as spiders, robots or data mining techniques to download, store or otherwise reproduce, store or distribute Content or to manipulate the PeopleFinders Applications or Services. You will take no action to interfere with, interrupt, destroy or limit the functionality of the PeopleFinders Applications or any computer software or hardware or telecommunications equipment. You may not use the PeopleFinders Applications or Services in any manner that could damage, disable, overburden, or impair any PeopleFinders server, or the network(s) connected to any PeopleFinders server, or interfere with any other party's use and enjoyment of any PeopleFinders Applications or Services. You may not attempt to gain unauthorized access to any PeopleFinders Applications or Services, other accounts, computer systems or networks connected to any PeopleFinders server or to any of the PeopleFinders Applications or Services, through hacking, cracking, and distribution of counterfeit software, password mining or any other means. You may not obtain or attempt to obtain any materials or information through any means not intentionally made available through the PeopleFinders Applications or Services. You may not reverse engineer, decompile or disassemble any software accessed through PeopleFinders Applications or Services, including any proprietary communications protocol used by PeopleFinders. You may not use information obtained from the PeopleFinders Applications to transmit any commercial, advertising or promotional materials, harass, offend, threaten, embarrass, or invade the privacy of any individual or entity, or violate any applicable law, regulation or rule.

You also agree to adhere to the following:

You will use the Services only for appropriate, legal purposes, and in compliance with all applicable federal, state and local laws and regulations

You will obtain any and all necessary licenses, certificates, permits, approvals or other authorizations required by federal, state or local statute, law or regulation that govern your use of the Services

. . .

You will not resell any of the information you obtain from the Services without our prior written consent

You will take reasonable steps to ensure that the information you receive from the Services is stored in a secure manner

. . .

**Search Limits.** Our memberships offer "Unlimited Searches", however we do not allow scraping of our data or excessive collection of our data for any purpose. As such, we have set the following limits on the number of reports that members may run each day (a day is defined as a 24-hour period). Members may run up to, but not more than 500 reports per day. This includes People Searches, Background Checks, Reverse Phone Lookups and any other reports we offer now or in the future. Memberships that exceed these limits within a 24-hour period may be turned off, without notification, for further investigation.

14. Rahman signed up to utilize Confi-Chek's PeopleFinders services on July 27, 2017. When Rahman signed up and paid to utilize PeopleFinders.com, he agreed to be bound by the Terms of Use. Confi-Chek is informed and believes that when Rahman signed up to utilize Confi-Chek's services in the abusive manner described below, he did so as an agent of LocalBlox. Accordingly, all relevant actions taken by Rahman are imputed to LocalBlox.

15. Despite agreeing to the Terms of Use, Rahman violated its express terms by exceeding the express search limitations on multiple occasions. In fact, when Rahman violated the search limitation the first time on July 27, 2017, Confi-Chek exercised its right to terminate his access to PeopleFinders.com.

16. Despite having his account terminated, Rahman utilized an alternative email address to register and utilize PeopleFinders.com again. While utilizing this alternative email address, Rahman once again violated the single day search limitation (500) by conducting approximately 88,702 searches on or around July 27, 2017 and August 7, 2017. When Confi-Chek discovered this violation, it terminated Rahman's new account's access to PeopleFinders.com.

17. Due to the voluminous searches conducted by Rahman, Confi-Chek is informed and believes that Rahman was utilizing a bot to scrape the content and data offered through PeopleFinders.com. Through the use of this bot, Rahman effectively circumvented Confi-Chek's technological measures that effectively control access to Confi-Chek's protected work. Confi-Chek is informed and believes that without the use of a bot or a similar device, it would be impossibly to run that many searches.

18. Confi-Chek is informed and believes that Rahman, and LocalBlox through Rahman, is engaging in this conduct in order to scrape and gather Confi-Chek's data, which Defendants will then resell to the general public for a profit.

19. Confi-Chek's prior efforts to stop Defendants' wrongful conduct has been temporarily successful at best. On at least one occasion, Rahman signed up for a new account utilizing a different email address and then returned to participating in the same wrongful conduct. Confi-Chek was able to catch and put a stop to Defendants' conduct a second time, but it is likely that Defendants will continue to engage in similar conduct unless the Court enjoins them.

## FIRST CLAIM FOR RELIEF
(Violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.*)
(Against all Defendants)

20. Confi-Chek realleges and incorporates each of the foregoing paragraphs of this Complaint by reference as if fully set forth herein.

21. On July 27, 2017, Defendants, through Rahman, violated Confi-Chek's Terms of Use by running approximately 85,164 searches in 24 hours, greatly exceeding Confi-Chek's daily search limitation of 500. On or around August 7, 2017, Defendants, through Rahman, again violated Confi-Chek's Terms of Use by running approximately 3,538 searches in 24 hours.

22. On July 27, 2017 and August 7, 2017, Defendants, through Rahman, used Rahman's computer to access approximately 88,702 different search reports. As a result, each of these search reports was transmitted through Rahman's computer's random access memory ("RAM") and a copy was created on his hard drive.

23. Confi-Chek is informed and believes that Defendants utilized a bot, or otherwise circumvented Confi-Chek's technological measures that effectively control access to Confi-Chek's copyright protected materials located on PeopleFinders.com.

24. As a proximate result of Defendants' conduct, Confi-Chek has suffered, and will continue to suffer, damages. Moreover, pursuant to the express terms of the Digital Millennium Copyright Act, Confi-Chek is entitled to statutory damages in the sum of not less than $200 or more than $2,500 per act of circumvention. 17 U.S.C. § 1203(c)(3).

25. Defendants threaten to continue to do the acts complained of herein and, unless restrained, will continue to do so, all to Confi-Chek's irreparable damage. Moreover, it would be difficult to ascertain the amount of compensation that could afford Confi-Chek adequate relief for such continuing acts, and a multiplicity of judicial proceedings would be required. Therefore, Confi-Chek's remedy at law is inadequate to compensate it for the injuries threatened.

Wherefore, Confi-Chek prays for judgment as stated below.

## SECOND CLAIM FOR RELIEF
(Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1010 et seq.)
(Against all Defendants)

26. Confi-Chek realleges and incorporates each of foregoing paragraphs of this Complaint by reference as if fully set forth herein.

27. On July 27, 2017, Defendants, through Rahman, violated Confi-Chek's Terms of Use by running approximately 85,164 searches in 24 hours, greatly exceeding Confi-Chek's daily search limitation of 500. On or around August 7, 2017, Defendants, through Rahman, again violated Confi-Chek's Terms of Use by running approximately 3,538 searches in 24 hours.

28. When Defendants, through Rahman, exceeded Confi-Chek's express daily search limitation on July 27, 2017 and August 7, 2017, they exceeded their authorized access on PeopleFinders.com and obtained information from Confi-Chek's protected computer database.

29. As a proximate result of Defendants' conduct, Confi-Chek has suffered, and will

continue to suffer, damages in an amount according to proof at trial.

30. Defendants threaten to continue to do the acts complained of herein and, unless restrained, will continue to do so, all to Confi-Chek's irreparable damage. Moreover, it would be difficult to ascertain the amount of compensation that could afford Confi-Chek adequate relief for such continuing acts, and a multiplicity of judicial proceedings would be required. Therefore, Confi-Chek's remedy at law is inadequate to compensate it for the injuries threatened. Additionally, the Computer Fraud and Abuse Act expressly authorizes injunctive relief pursuant to 18 U.S.C. § 1030(g).

Wherefore, Confi-Chek prays for judgment as stated below.

## THIRD CLAIM FOR RELIEF
(Breach of Contract)
(Against all Defendants)

31. Confi-Chek realleges and incorporates each of foregoing paragraphs of this Complaint by reference as if fully set forth herein.

32. Confi-Chek and Defendants entered into a contract when Rahman signed up to utilize PeopleFinders.com. The terms of that contract are reflected in the Terms of Use, including that Defendants would not exceed the express daily search limitation of 500 searches and that they would only utilize PeopleFinders.com's search function for personal use.

33. Confi-Chek did all, or substantially all, of the significant things that the contract required it to do.

34. All conditions required for Defendants' performance occurred.

35. Defendants, through Rahman, breached the contract by performing approximately 85,164 searches in one 24 hour period and another 3,538 searches during another 24 hours period, resulting in Confi-Chek's termination of Rahman's two separate accounts. Moreover, Confi-Chek is informed and believes that Defendants breached the contract by conducting these searches for non-personal use.

36. Defendants' breaches proximately caused Confi-Chek damages in an amount according to proof at trial.

Wherefore, Confi-Chek prays for judgment as stated below.

## FOURTH CLAIM FOR RELIEF
### (Conversion)
### (Against all Defendants)

37. Confi-Chek realleges and incorporates each of foregoing paragraphs of this Complaint by reference as if fully set forth herein.

38. Confi-Chek owned and had a right to possess its protected materials, including without limitation, its search reports offered through PeopleFinders.com.

39. Defendants, through Rahman, substantially interfered with Confi-Chek's property by knowingly or intentionally taking possession of and copying Confi-Chek's materials in a manner that is inconsistent with Confi-Chek's ownership interest and its Terms of Use.

40. Confi-Chek did not consent to Defendants' conduct.

41. Defendants' conduct was a substantial factor in causing Confi-Chek damages in an amount according to proof at trial.

Wherefore, Confi-Chek prays for judgment as stated below.

## FIFTH CLAIM FOR RELIEF
### (Unfair Competition - Business & Professions Code § 17200)
### (Against all Defendants)

42. Confi-Chek realleges and incorporates each of foregoing paragraphs of this Complaint by reference as if fully set forth herein.

43. For purposes of Business and Professions Code § 17200, unfair competition includes any unlawful, unfair, or fraudulent business act or practice.

44. Defendants, through Rahman, engaged in unfair competition when Rahman exceeded Confi-Chek's express daily search limitation by extraordinary volumes on July 27, 2017 and August 7, 2017. Defendants also engaged in unfair competition when Rahman copied this information to his computer's hard drive and scraped large sums of Confi-Chek's data.

45. Because Defendants have engaged in the foregoing acts of unfair competition, Confi-Chek is entitled to compensatory damages in an amount according to proof at trial, and injunctive relief precluding Defendants from utilizing PeopleFinders.com and the data Defendants' scraped from PeopleFinders.com in perpetuity.

Wherefore, Confi-Chek prays for judgment as stated below.

## PRAYER FOR RELIEF

Confi-Chek prays for judgment in this action as follows:

1. for an order enjoining and restraining Defendants and their agents, servants, and employees from directly or indirectly accessing and copying Confi-Chek's copyright protected materials;

2. for an order enjoining and restraining Defendants and their agents, servants, and employees from directly or indirectly circumventing a technological measure that effectively controls access to Confi-Chek's copyright protected materials;

3. for an order enjoining and restraining Defendants and their agents, servants, and employees from directly or indirectly accessing Confi-Chek's PeopleFinders.com;

4. for an order enjoining and restraining Defendants and their agents, servants, and employees from utilizing the data they improperly obtained from PeopleFinders.com;

5. for compensatory damages in an amount according to proof at trial;

6. for an order granting Confi-Chek statutory damages;

7. for an order granting Confi-Chek treble damages;

8. for an order granting Confi-Chek cost of suit;

9. for an order granting Confi-Chek its reasonable attorneys' fees;

10. for an order granting Confi-Chek pre and postjudgment interest at the legal rate; and

11. for an order granting such other and further relief as the Court deems just.

Dated: October 13, 2017          Respectfully submitted,

**WEINTRAUB TOBIN** CHEDIAK COLEMAN GRODIN
Law Corporation

By:   /s/ Josh H. Escovedo
       Josh H. Escovedo
       California State Bar No. 284506

Attorneys for Plaintiff Confi-Chek, Inc.

## DEMAND FOR JURY TRIAL

Pursuant to rule 38 of the Federal Rules of Civil Procedure, Confi-Chek demands a jury trial on all eligible issues.

Dated: October 13, 2017

Respectfully submitted,

**WEINTRAUB TOBIN** CHEDIAK COLEMAN GRODIN
Law Corporation

By: /s/ Josh H. Escovedo
Josh H. Escovedo
California State Bar No. 284506

Attorneys for Plaintiff Confi-Chek, Inc.